UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-1486 JGB (KKx)** | Date | January 4, 2021 |
|---|---|---|---|
| Title | ***Jesus Ortiz Paz v. County of San Bernardino, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING-IN-PART AND DENYING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 17); and (2) VACATING the January 11, 2021 Hearing (IN CHAMBERS)**

Before the Court is a motion to dismiss filed by Defendants County of San Bernardino, Alberto Balcazar, Alex Cerritos, and Matt Guzzino. ("Motion," Dkt. No. 17.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion. The January 11, 2021 hearing is VACATED.

## I.  BACKGROUND

On June 1, 2020, Plaintiff Jesus Ortiz Paz filed a complaint against Defendants County of San Bernardino, Matt Guzzino, Alex Cerritos, Alberto Balcazar, and Does 1-50 in the County of San Bernardino Superior Court. ("Complaint," Dkt. No. 1-1.) On July 24, 2020, Defendants removed the action to federal court. ("Notice of Removal," Dkt. No. 1.)

On October 22, 2020, Plaintiff filed a First Amended Complaint. ("FAC," Dkt. No. 16.) The FAC alleges four causes of action: (1) unlawful detention in violation of 42 U.S.C. § 1983; (2) excessive force in violation of 42 U.S.C. § 1983; (3) arrest without probable cause in violation of 42 U.S.C. § 1983; and (4) false imprisonment in violation of 42 U.S.C. § 1983.

On November 5, 2020, Defendants filed this Motion. (See Motion.) Plaintiff filed his opposition on November 30, 2020. ("Opposition," Dkt. No. 21.) Defendants replied on December 7, 2020. ("Reply," Dkt. No. 22.)

## II.    FACTUAL ALLEGATIONS

The following allegations are accepted as true for the purposes of this Fed. R. Civ. P. 12(b)(6) Motion.  Plaintiff attended a party at a home in the city of San Bernardino on May 11, 2019.  (FAC ¶ 10.)  At or around 10:30 p.m., Officers Guzzino, Balcazar, and Cerritos (collectively, "Defendant Officers"), were dispatched to that residence in response to a noise complaint.  (Id. ¶ 11.)  Upon arrival, Defendant Officers could hear loud music coming from the residence, and saw subjects entering the residence and closing and locking the gate, preventing Defendant Officers from entering the home.  (Id. ¶ 12.)  Defendant Officers were unable to locate the owner of the residence, who disregarded their commands to cease playing the loud music. (Id.)

Officer Balcazar issued an Administrative Penalty to the owner of the residence, and placed a copy of the front door, as he was unable to contact the homeowner and none of the party attendees claimed ownership of the house.  (Id. ¶ 13.)

Plaintiff alleges that a Supervising Officer, believed to be Sergeant Baker, ordered Defendant Officers to stop and search all cars leaving the party in retaliation for the two noise complaints and the homeowner's failure to cease the loud music.  (Id. ¶ 14.)  According to body worn camera footage, officers at the scene received orders to start towing people's cars, checking registration, and stopping people for assessment as they left the party.  (Id. ¶ 14.)  Officers began stopping pedestrians and drivers as a result of these orders.  (Id.)

While at the scene, Sergeant Baker observed three subjects, including Plaintiff, leaving the party in a black Toyota Corolla.  (Id. ¶ 15.)  Plaintiff was seated in the back passenger seat of the vehicle, behind the driver.  (Id.)  Officer Guzzino followed the vehicle as it drove away from the party.  Officer Guzzino initiated a traffic stop of the vehicle solely because the occupants had been seen leaving the party and may have ingested alcohol.  (Id. ¶ 16.)  The driver was not driving erratically or in any way that would suggest he was inebriated.  (Id.)  Officer Balcazar assisted in the traffic stop.  (Id.)

Officer Guzzino advised Cesar Rosa, the driver of the vehicle, that he had been pulled over because he was leaving a party and the officers were making sure he had not been drinking alcohol, as shown by his body worn camera footage.  (Id. ¶ 17.)  Mr. Rosa responded that he was sober and had not done anything illegal to justify the stop.  (Id.)  Officer Guzzino then removed Mr. Rosa from the vehicle.  (Id. ¶ 18.)  Mr. Rosa continued to ask Officer Guzzino why he had been pulled over, and in response, Officer Guzzino threatened Mr. Rosa with handcuffing him. (Id.)  Officer Guzzino then told Mr. Rosa, "Because of your attitude and because I don't feel safe with you acting like a punk, you're being detained.  You're not under arrest, but all of you guys are detained."  (Id. ¶ 19.)  Officer Guzzino handcuffed Mr. Rosa and placed him on the curb. (Id.)  Mr. Rosa did not threaten Officer Guzzino with any violence, state that he possessed a weapon, or raise his voice.  (Id. ¶ 20.)  Officer Balcazar removed the front passenger, Martin Estrada, from the vehicle, conducted a pat-down search, and placed him on the curb next to Mr.

Rosa.  (Id. ¶ 21.)  Officer Guzzino asked Mr. Rosa whether he consented to Defendant Officers' search of his vehicle, and Mr. Rosa replied that he did not.  (Id. ¶ 22.)

Officer Guzzino then removed Plaintiff from the vehicle to detain him and place him in handcuffs.  (Id. ¶ 23.)  Plaintiff complied with Officer Guzzino's orders to place his arms behind his back.  (Id.)  As shown in his body worn camera footage, Officer Guzzino placed Plaintiff in a standing position with his back toward Officer Guzzino.  (Id. ¶ 24.)  Plaintiff held both hands behind his back without resisting, while asking Officer Guzzino what he was doing and why he was being arrested.  (Id. ¶ 24.)  However, Officer Guzzino repeatedly said, "Don't resist. Don't resist."  (Id.)  Officer Balcazar then assisted Officer Guzzino, and they made Plaintiff bend over the trunk of the vehicle with his arms behind his back while they placed handcuffs on Plaintiff.  (Id. ¶ 25.)  Plaintiff repeatedly told the officers, "I'm not resisting" and "Do whatever you want."  (Id.)  Officer Guzzino immediately wanted to put Plaintiff on the ground, even though Plaintiff was not resisting.  Officer Cerritos joined Officers Balcazar and Guzzino, and aggressively secured the handcuff around Plaintiff's left wrist.  (Id. ¶ 27.)  He then claimed Plaintiff was pulling his hands away and needed to be "taken to the ground."  (Id.)  However, Guzzino's body worn camera footage shows that Plaintiff was complying with the Officers' commands and was not physically able to pull his hands away.  (Id.)

Defendant Officers then slammed Plaintiff onto the ground, and ordered him to place his hands behind his back.  (Id. ¶ 28.)  Plaintiff immediately complied, and Officer Guzzino's body worn camera footage shows him lying on the ground with his hands behind his back.  (Id.)  Defendant Officers continued to yell for Plaintiff to put his hands behind his back and forcefully placed their knees on his back and neck until they finished handcuffing him.  (Id.)  Plaintiff repeatedly told the officers that he was in pain and pleaded for them to stop pushing his face into the concrete.  (Id. ¶ 29.)  Defendant Officers did not provide Plaintiff with basic necessary care for his physical pain and injuries, and he suffered from extensive facial cuts and bruising.  (Id.)

### III.   LEGAL STANDARD

#### A.  Rule 12(b)(6)

Defendants move to dismiss the FAC pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  Factual allegations must be enough to "raise a right to relief above a speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal.

Oct. 26, 2015).  In considering a Rule 12(b)(6) motion to dismiss, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

**B.  Leave to Amend**

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "[t]his policy is to be applied with extreme liberality."  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

## IV.   DISCUSSION

Defendants County of San Bernardino and Officers Guzzino, Balcazar, and Cerritos move to dismiss Plaintiff's FAC, arguing that (1) the action is barred by the Heck doctrine; (2) Plaintiff's third and fourth claims are duplicative; and (3) Plaintiff fails to state facts sufficient to support a Monell claim against the City of San Bernardino.  (See Mot.)  For the reasons established below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

**A.  Heck Doctrine**

Defendants argue that this action is barred by the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held that a claim for damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under Section 1983, unless that conviction or sentence has been reversed, expunged, or declared invalid:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint

must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87.  This holding is justified by "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction[,]" and prevents "collateral attack[s]" on criminal convictions "through the vehicle of a civil suit."  Id. at 484-86.

Here, Plaintiff was arrested for violating Penal Code § 148(a) (obstructs/resists/public officer).[1]  (Defs.' RJN, Ex. A.)  On August 7, 2020, Plaintiff entered a plea deal, where he pleaded no contest to and was ultimately convicted of the lesser offense of Penal Code § 415 (fighting; noise; offensive words).  (Id.)  As detailed below, Defendants assert that Plaintiff's "claims are, essentially, a collateral attack on his criminal conviction[,]" and therefore run afoul of the fundamental holding of Heck.  (Mot. at 5.)  The Court disagrees.

### 1.  Arrest and Detention (Claims 1, 3, and 4)

Defendants first argue that Plaintiff's Section 1983 claims for unlawful detention, arrest without probable cause, and false imprisonment are premised on the idea that Plaintiff was wrongfully seized and arrested in violation of the Fourth Amendment.  (Mot. at 5.)  Defendants contend that to succeed, Plaintiff must show that his arrest was without a warrant or probable cause, but that his criminal conviction bars him from making such an argument.  (Id. at 6.)

Defendants point to Gocke v. United States, where the court granted summary judgment on the plaintiff's false arrest and imprisonment claims, holding they were barred by the Heck doctrine.  2019 WL 4238881, at *8 (C.D. Cal. July 10, 2019).  (Mot. at 6-7.)  There, the plaintiff was arrested for violation of Penal Code § 69 (felony resisting arrest), but pleaded no contest to and was convicted of a violation of Penal Code § 415 (disturbing the peace).[2]  Id. at *3.  The court

---

[1] Defendants ask the Court to take judicial notice of documents pertaining to the state court criminal cases brought against Plaintiff.  ("Defs.' RJN," Dkt. No. 17-1.)  These documents are public records and are therefore proper for judicial notice.  See, e.g., Porter v. Ollison, 620 F.3d 952, 954–55 (9th Cir. 2010) (noting that judicial notice of "any state court dockets or pleadings that have been located (including on the Internet)" is proper); Montano v. Frauenheim, 2016 WL 1459084, at *2 (C.D. Cal. Jan. 25, 2016) (taking judicial notice of conviction listed on California Appellate Courts' website).  The Court therefore GRANTS Defendants' RJN.

[2] The facts in that case are as follows.  The plaintiff attempted to enter or entered the San Bernardino County Fairgrounds twice, despite it being closed due to a fire in the area.  Id. *2.  Plaintiff was first turned away from a blocked entrance, and then returned out of curiosity to take photos.  Id. at *8.  The plaintiff interacted with a federal agent at the scene, who observed the plaintiff to be agitated and potentially under the influence of drugs or alcohol or suffering from a mental health issue, and asked him to produce identification.  The plaintiff refused to offer photo identification, instead offering a County identification card with no photo.  Id. at *2.  After the (continued . . . )

---

found that the legality of the plaintiff's arrest was "directly implicated by his false arrest and imprisonment claim[,]" as his plea to a violation for disturbing the peace involved the incident for which he was arrested. Id. at *7. While the plaintiff argued that nothing in his plea agreement stemmed from the underlying actions alleged in the complaint, as his plea was to a noise violation, the court rejected that argument. Id. In so doing, the court distinguished the Ninth Circuit's decision in Lockett v. Ericson, 656 F.3d 892 (9th Cir. 2011).

In Lockett, the Ninth Circuit held that the plaintiff's nolo contendere plea for driving under the influence did not bar his Fourth Amendment claim for warrantless search of a home. Id. at 896. Because the plaintiff's conviction derived from his plea, rather than from a verdict obtained with supposedly illegal evidence attained through the home search, the court held that his conviction did not depend on the legality of the home search. Id. Plaintiff argues that this matter is more closely analogous to Lockett. The Court agrees.

In Lockett, the plaintiff attempted to drive home after his birthday party, but slid off the road and left his car on the road, walking the remaining distance. Id. at 894. After the highway patrol received a call reporting the car off the road and a potentially drunk driver, the patrol officers went to the plaintiff's residence and, when no one responded, entered the residence. Id. The officers then conducted sobriety tests and arrested the plaintiff for driving under the influence of alcohol. Id. The plaintiff was charged with one count of driving under the influence of alcohol or drugs and one count of driving at 0.08 or above alcohol level, but plead nolo contendere to a lesser charge of "wet recklessness." Id. at 895. Plaintiff argues that in Lockett, there were two separate incidents that do not implicate the other: the wet reckless conviction and the warrantless search and arrest. (Opp'n at 14.) Similarly, here, there are two separate incidents: the loud noise at the party (and resulting disturbing the peace conviction) and the warrantless detention and arrest of Plaintiff. (Id.)

The Court agrees that here, as in Lockett, Plaintiff's conviction for disturbing the peace does not depend on the legality of his arrest. Plaintiff's conviction does not derive from evidence obtained through his arrest, nor does there appear to be any other basis to conclude that the validity of his conviction for disturbing the peace depends on the legality of his detention and arrest. Lockett, 656 F.3d at 896-97. The Court rejects Defendants' overbroad interpretation of the Heck doctrine that if "Plaintiff was arrested for a crime and subsequently convicted of a crime … [his] criminal conviction bars him from arguing that probable cause did not exist for his arrest and detention." (Reply at 3.) As the Supreme Court clarified in Heck, where a "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. (footnotes omitted). Here, the Court is not persuaded that

---

officer ordered him to exit his vehicle, the plaintiff did not comply with the order, and drove away slowly. The officer jumped into the driver's side window of the moving car, but the plaintiff pushed the officer out of the car. The officer then fired at the vehicle. With several federal officers pursuing him, the plaintiff exited his vehicle, at which point he was handcuffed and arrested. Id.

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk MG

Plaintiff's claims for unlawful detention, arrest without probable cause, and false imprisonment would invalidate his conviction for disturbing the peace.  Id.

### 2.  Excessive Force (Claim 2)

Defendants next argue that Plaintiff's Section 1983 claim for excessive force is also premised on allegations that Defendant Officers lacked justification to contact him, and is foreclosed by Plaintiff's conviction.  (Mot. at 7.)  Defendants contend that a conviction under Section 415 requires a finding that Plaintiff "did not act in self-defense or in defense of someone else."  (Mot. at 8.)  Defendants therefore argue that implicit within Plaintiff's conviction was a finding that Defendant Officers did not use excessive force against him because had that been the case, Plaintiff could have asserted self-defense.  (Id. at 8.)  According to Defendants, a finding that Plaintiff was acting in valid self-defense would negate this required element of Section 415 conviction.  (Id. at 8.)  But as Plaintiff points out, the above element is only a requirement for a conviction for engaging in a public fight in violation of Section 415(1).  Perez v. City of Santa Cruz, 2017 WL 6026246, at *8 (N.D. Cal. Dec. 5, 2017) ("Engaging in a public fight in violation of § 415(1) requires the government to prove that … the defendant did not act in self-defense or in defense of someone else.") (citing CALCRIM, Judicial Council of California Criminal Jury Instructions, Vol. 2 at 2688 (Spring 2017)).

A conviction for "disturb[ing] another person by loud and unreasonable noise" in violation of Section 415(2) does not require such a showing.  Rather, "there must be either: 1. A clear and present danger of immediate violence; OR 2. The noise must be used for the purpose of disrupting lawful activities, rather than as a means to communicate."  CALCRIM, Vol. 2 at 2689.  Neither of these elements would be inconsistent with an excessive force claim.  While Defendants dispute Plaintiff's representation that his criminal conviction was only for "loud noise," neither the judicially noticed documents nor the SAC support Defendants' suggestion that Plaintiff's conviction was for engaging in a public fight. (Reply at 4-5.)  Even if that were the case, the Court is not persuaded by Defendants' unsupported argument that a required showing that Plaintiff did not act in self-defense would be inconsistent with an excessive force claim.  The validity of Plaintiff's conviction does not depend on Defendant Officers' use of unreasonable or excessive force.  The Court therefore DENIES Defendants' Motion as to Claim 2.

## B.  Duplicative Claims

Defendants argue that Plaintiff's third and fourth claims for false arrest and false imprisonment are duplicative.  However, the Court declines to dismiss these claims merely because they may be duplicative or superfluous.  As the Ninth Circuit has noted, that a claim is duplicative of or superfluous of other claims "is not grounds for dismissal."  Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762-63 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)).  Rather, to the extent that these claims may be duplicative, "Plaintiff is [also] permitted to plead claims in the alternative."  Diamos v. Walmart Inc., 2020 WL 1942322, at *4 (C.D. Cal. Jan. 9, 2020).  The Court therefore DENIES Defendants' Motion as to Claims 3 and 4.

## C.  Monell Liability

Finally, Defendants argue that Plaintiff fails to allege sufficient facts in support of her Monell claims.  (Mot. at 4.)  The Court agrees.  Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), a municipality cannot be sued under a theory of respondeat superior for injuries inflicted by its employees or agents.  Rather, municipalities are subject to damages under 42 U.S.C. § 1983 if the plaintiff proves: (1) that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom; (2) that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; or (3) that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992); Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008).  A municipality can be liable under Section 1983 only where its policies are the "moving force [behind] the constitutional violation."  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (citing Monell, 436 U.S. at 694).  Where the alleged policy or practice is a failure to act to preserve constitutional rights, the plaintiff must also establish the failure "amounts to deliberate indifference."  Id. at 389–91.

Defendants argue that the FAC does not allege that there existed a custom, practice, or policy that led to a violation of his civil rights.  (Mot. at 10.)  The Court agrees that the SAC does not sufficiently allege a custom, practice, or policy.  However, Plaintiff responds that his Monell claim is premised on an action initiated by an official with final policy-making authority and ratified by a supervisor, rather than on a longstanding practice or custom.  (Opp'n at 17.)  Plaintiff alleges that Defendant Officers were ordered by a Supervising Officer, Sergeant Baker, to unconstitutionally stop and search all cars leaving the party in retaliation for the noise complaints and the homeowner's failure to cease the loud music.  (FAC ¶ 14.)

To show ratification, a plaintiff must establish that "authorized policymakers approved a subordinate's decision and the basis for it."  Christie v. Iopa, 176 F.3d 1231 (9th Cir. 1999).  The policy maker must "have knowledge of the constitutional violation and actually approve of it[.]"  Sheehan v. City and County of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part, on other grounds, City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765 (2015).  However, the SAC merely states that Sergeant Baker was a Supervising Officer, and fails to identify whether he was an "authorized policymaker," an allegation necessary to establish municipal liability under a ratification theory.[3]  Wettstein v. Cty. of Riverside, 2020 WL 2199005,

---

[3] Whether an official is a policymaker for Monell purposes is a question governed by state law.  City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988).  "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'"  Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion)).

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk MG

at *6 (C.D. Cal. Jan. 22, 2020) (rejecting ratification theory where complaint failed to identify whether supervisors were policymakers). Nor has Plaintiff pleaded whether or how Sergeant Baker was "a final policymaking authority [] whose edicts or acts may fairly be said to represent official policy in the area of decision." See J.M. by and Through Rodriguez v. Cty. of Stanislaus, 2018 WL 5879725, at *3 (E.D. Cal. 2018) (citing Thomas v. Cty. of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008)).

Plaintiff argues that he is entitled to the discovery process to determine whether Sergeant Baker was an official with final decision-making authority or if this was a longstanding practice and custom of the local government entity. (Opp'n at 8.) However, Plaintiff's factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The SAC does not meet this baseline. The Court GRANTS Defendants' Motion as to the County's Monell liability, and DISMISSES the claims against the County WITH LEAVE TO AMEND.

## V.    LEAVE TO AMEND

Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Here, the Court identifies factual deficiencies which may be cured by amendment. Thus, the Court GRANTS LEAVE TO AMEND.

## VI.    CONCLUSION

For the reasons above, the GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion. The January 4, 2021 hearing is VACATED. Plaintiff shall file an amended complaint, if any, by January 15, 2021.

**IT IS SO ORDERED.**